UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MSP RECOVERY CLAIMS, SERIES LLC, a
Delaware limited liability company; and
SERIES 16-08-483, a designated series of
MSP Recovery Claims, Series, LLC,

                            Plaintiffs,

v.

MERCHANTS MUTUAL INSURANCE
COMPANY, a Delaware corporation;
MERCHANTS NATIONAL INSURANCE
COMPANY, a New Hampshire corporation;
and MERCHANTS PREFERRED
INSURANCE COMPANY, a Delaware
corporation,

                            Defendants.

_____

**REPORT AND RECOMMENDATION**

1:19-cv-524-JLS-JJM

        Plaintiffs MSP Recovery Claims, Series LLC ("MSP Series") and Series 16-08-483, a designated series of MSP Recovery Claims, Series, LLC ("Series 16-08-483") commenced this purported class action pursuant to 42 U.S.C. §1395y(b)(3)(A), the Medicare Secondary Payer Act ("MSPA"). Plaintiffs allege that defendants are primary payers under the statute because they issued automobile no-fault policies to certain Medicare beneficiaries. Plaintiffs claim that defendants owe to them, as assignees of Health Insurance Plan of Greater New York ("HIPGNY"), a Medicare Advantage Organization ("MAO"), reimbursement for secondary payments that HIPGNY made for medical treatments provided to defendants' policy holders. *See* Plaintiffs' Amended Class Action Complaint for Damages (the "Amended

Complaint") [19]. [1]   Before the court is defendants' motion to dismiss pursuant to Fed. R. Civ.

P. ("Rule") 12(b)(1) and 12(b)(6) [37], which has been referred to me by District Judge John L.

Sinatra for initial consideration [50].  Having reviewed the parties' submissions [37, 47, 48, 52,

55, 58, 59] and heard oral argument on March 5, 2020, I recommend that the motion be granted,

without prejudice to filling an amended complaint.


## BACKGROUND

This case involves plaintiffs' claims for reimbursement from defendants pursuant

to the MSPA.  Plaintiff MSP Series is a limited liability company ("LLC") formed in the State of

Delaware to, among other things, pursue "claims recovery and reimbursement rights assigned to

the Company or any of its designated Series".  MSP Recovery Claims, Series LLC Amended and

Restated Limited Liability Company Operating Agreement ("Operating Agreement") [58-2], p.

32 of 58 (CM/ECF pagination).  Plaintiff Series 16-08-483 was established under Delaware law

as a series of MSP Series pursuant to the Operating Agreement and a Certificate of Designation,

effective March 20, 2018.  *See* Id. at 32-33 of 58 (CM/ECF pagination); Certificate of

Designation [58-2], pp. 54-58 of 58 (CM/ECF pagination).  Series 16-08-483 is the assignee of

some of HIPGNY's MSPA claims.  Assignment Agreement, effective March 20, 2018

("Assignment") [58-1], pp. 6-7 of 18 (CM/ECF pagination).

Because I recommend that the court grant this motion under Rule 12(b)(1), I

outline below only those facts and arguments relevant to that analysis.

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

**A. The Amended Complaint**

Plaintiffs' Amended Complaint [19] alleges that defendants are no-fault insurers that failed to reimburse, as required by the MSPA, conditional payments that HIPGNY made for the medical treatment of Medicare beneficiaries.  Amended Complaint [19, ¶ 6.  To demonstrate their entitlement to relief, plaintiffs outlined in the Amended Complaint three exemplar claims related to Medicare beneficiaries R.A. ([19] ¶¶ 7-13), J.O. (id., ¶¶ 14-20), and K.Y. (id., ¶¶ 21-25).  Plaintiffs allege that defendants issued to each of these beneficiaries a no-fault insurance policy.  Plaintiffs allege that each beneficiary was injured in an accident covered by the defendants' policies.  Amended Complaint [19], ¶¶8, 15, 22.  For each of the exemplar claims, plaintiffs provided the date of accident, diagnosis codes for the beneficiaries' injuries, the date the medical service was provide to the beneficiary, the amounts billed by the providers for the service rendered to the beneficiary, and the amount HIPGNY actually paid.  *See* Amended Complaint [19] ¶¶ 8-10, 15-17, 22-24.

On March 20, 2018, pursuant to the Assignment, nonparties  EmblemHealth Services Company, LLC, Group Health Incorporated ("EmblemHealth"), and HIPGNY assigned to Series 16-08-483 and nonparty MSP Recovery, LLC ("MSP Recovery"):

> "[A]ny and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims . . . and any and all rights . . . to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims".

Amended Complaint [19], p. 12, ¶ 29; Assignment [19-8], p. 2, ¶ 2.b.  The Assignment defines "Assigned Medicare Recovery Claims" as:

> "[A]ll right, title, interest in and ownership of Medicare Recovery
> Claims – excluding Medicare Recovery Claims that can be
> asserted against Assignor's members, enrollees and/or contracted
> providers, and excluding Medicare Recovery Claims that, as of the
> Effective Date, have been assigned to and/or are being pursued by
> other recovery vendors, including, but not limited to, The Rawlings
> Group – related to Medicare Health Care Services that were
> rendered and paid for by Assignor during the six (6) year period
> beginning September 29, 2011 and ending September 29, 2017".

Id., p. 1.  The Amended Complaint alleges further that MSP Recovery assigned to Series 16-08-483 the rights it acquired pursuant to the Assignment in an April 4, 2018 "Series Assignment" purportedly attached to the Amended Complaint as Exhibit I.  However, Exhibit I is a March 20, 2018 "Certificate of Designation" that appears to create Series 16-08-483 as a series of MSP Series.  The Certificate of Designation states that MSP Series (defined therein as the "Company") "has the right and authority to seek reimbursement of Medicare payments in respect of any such assigned claims, whether in the name of the Series or the Company" and "maintains the legal right to sue on behalf of the Series".  Certificate of Designation [19-2], p. 2, ¶ 1; *see also* Amended Complaint [19], ¶¶ 53-54.

The Series Assignment is not attached to the Amended Complaint.  However, plaintiffs allege that in it, MSP Recovery assigned to Series 16-08-483 "any and all of Assignor's right, title, ownership and interest in and to the 'Assigned Claims', 'Claims', 'Assigned Assets'[,] 'Assigned Medicare Recovery Claims', and 'Assigned Documents' (and all proceeds and products thereof) as such terms may be defined in the March 20, 2018 Assignment Agreement."  Amended Complaint [19], ¶ 30.  The Amended Complaint further alleges that defendants are primary plans pursuant to the MSPA, 42 U.S.C. § 1395y(b)(2)(A), and are required, but failed, to reimburse HIPGNY for the payments that HIPGNY made for the enumerated medical services provided to the exemplar Medicare beneficiaries, among others.

*See* <u>id.</u> at ¶¶ 44, 72, 76.  Plaintiffs allege that they suffered damages due to defendants' failure to

reimburse HIPGNY, and claim they are entitled to double damages pursuant to 42 U.S.C. §

1395y(b)(3)(A).  <u>Id.</u>, ¶¶ 77, 80.

### B.  Defendants' Motion to Dismiss

Defendants argue that dismissal is appropriate pursuant to Rule 12(b)(1) because

plaintiffs lack standing to sue.  Specifically, they assert that the Assignment is invalid because it

fails to identify which claims are included in the Assigned Medicare Recovery Claims described

therein and which are excluded.  Defendants' Memorandum of Law [37-3], pp. 12-14.  In

addition, they argue that plaintiff MSP Series lacks standing because it is not a named assignee

and cannot, as a matter of Delaware law, assert standing on behalf of one of its series.  <u>Id.</u>, pp.

14-16.

Plaintiffs respond that the Amended Complaint [19] and the contracts attached

both to it and to their Memorandum of Law opposing defendants' motion to dismiss [47]

demonstrate their standing as an assignee of HIPGNY's MSPA claims, including those of the

exemplar beneficiaries outlined in the Amended Complaint.  Plaintiffs' Memorandum of Law

[47], pp. 6-11.  Further, plaintiffs argue that MSP Series has standing because Series 16-08-483

is not an entity independent of MSP Series, and that MSP Series retained in its operating

agreement the right to sue, in its own name, to enforce the rights that Series 16-08-483 received

in the Assignment.  <u>Id.</u>, pp. 6-14; *see also* Amended Complaint [19], ¶¶ 53-56.

In reply, defendants argue that plaintiffs failed to cure the deficiencies noted in

their moving papers.  Neither the unauthenticated Series Assignment plaintiffs attached to their

memorandum, nor the inferences plaintiffs ask the court to draw from the allegations in the

Amended Complaint, satisfy plaintiffs' burden to demonstrate that the plaintiffs have standing

and that the court has subject matter jurisdiction.  Reply Memorandum of Law [48], pp. 1-2.
Defendants argue further that Delaware law concerning series LLCs demonstrates that the
"parent" of a series LLC does not have standing to sue on behalf of its series.  Id., pp. 3-4.

### C.  Plaintiffs' Evidentiary Submissions to Support Standing

Following oral argument, and given the plaintiffs' burden to demonstrate
standing, I ordered plaintiffs to "make an evidentiary showing of their standing to pursue this
action by demonstrating through affidavit(s) (or declaration(s)) that they were assigned the
representative claims of R.A., J.O., and K.Y. as set forth in the Amended Complaint [19], and
authenticating the relevant assignments and related agreements".  Text Order [57].  In response,
plaintiffs filed a declaration of Carlos Manalansan [58-1] (the "Manalansan Declaration"), Vice
President and Deputy General Counsel of EmblemHealth; and affidavits of Jorge Lopez [58-2]
(the "Lopez Affidavit"), General Counsel for MSP Recovery and plaintiffs' corporate
representative, and Christopher Miranda, Jr. [58-3] (the "Miranda Affidavit"), a health care data
analyst for MSP Recovery.

Mr. Manalansan is the Vice President and Deputy General Counsel of
EmblemHealth.  Manalansan Affidavit [58-1],  ¶ 2.  HIPGNY is EmblemHealth's subsidiary.  Id.
¶ 3.  In that capacity, he is familiar with HIPGNY's contracts and has personal knowledge of the
assignments that HIPGNY made concerning claims arising under the MSPA. Id. ¶ 4.  He
confirmed that HIPGNY assigned certain of its Medicare recovery claims for services rendered
between September 29, 2011 and September 29, 2017 to Series 16-08-483 pursuant to the
Assignment, and attached a copy to his declaration.  Id. ¶6.  Based upon his review of the
Amended Complaint and the information from The Rawlings Group, he stated that "the only
entities to which HIPGNY has ever assigned the R.A., J.O., and K.Y. claims are Series 16-08-

483 and MSP Recovery LLC", and that "no other person, entity, or recovery vendor – including The Rawlings Group – has the legal right to pursue the R.A., J.O., and K.Y. claims against Merchants on behalf of HIPGNY". Id. ¶¶ 13-14.

Jorge Lopez is the General Counsel for MSP Recovery, the designated servicing agent of MSP Series and Series 16-08-483, and a "corporate representative" of MSP Series and Series 16-08-483. Lopez Affidavit [58-2], ¶¶2-3. In that capacity, he is familiar with MSP Recovery's business records, including the business records of MSP Series and Series 16-08-483. Id. at ¶ 5. He confirmed that MSP Recovery's business records include the Assignment and a March 27, 2018 Amended and Restated Limited Liability Company Operating Agreement for MSP Series ("Operating Agreement"), and attached a copy of these documents, among others, to his affidavit. Id. at ¶¶ 6.A., 6.E, Exhibits A, and E. MSP Series' Operating Agreement permits MSP Series to "establish any number of designated series of members, managers, Series Interests of assets ('Series')", but reserves to MSP Series "the legal right to sue on behalf of each Series and be entitled to pursue any and all rights, benefits, and causes of action arising from assignments to a Series" and to "seek reimbursement of Medicare payments made by assignors" "in its own name, or in the name of the Series". Id. at ¶ 14; *see also* id., Operating Agreement [58-2], pp. 32-33 of 58 (CM/ECF pagination), ¶¶ 3.1 (a) and (d). Series 16-08-483 is one of the series created by the Operating Agreement. Id., Operating Agreement [58-2], pp. 32-33, 49 of 58 (CM/ECF pagination), ¶ 3.1 (a).

Christopher Miranda, Jr. is a licensed attorney employed by MSP Recovery, plaintiffs' servicing agent, as a health care data analyst. Miranda Affidavit [58-3], ¶¶ 3-4. He is the custodian of MSP Recovery's business records, and has personal knowledge of the data collected and stored in MSP Recovery's software system, including records from HIPGNY

related to Medicare beneficiaries.  Id. at ¶¶5-710.  The claims data HIPGNY provided to MSP

Recovery "include[d] lists of those claims that are 'carved-out,' due to having already been

recovered or otherwise".  Id. at ¶ 16.  He confirmed that plaintiffs "reviewed all carve-out lists

provided by HIPGNY" and that "**R.A., J.O., and K.Y.'s claims are not included on**

**HIPGNY's carve-out lists**".  Id. at ¶ 21 (emphasis in original).

## DISCUSSION

### A.  Standard Governing a Motion to Dismiss

To survive a defendant's Rule 12(b)(1) motion to dismiss, a plaintiff "must allege

facts that affirmatively and plausibly suggest that it has standing to sue".  Amidax Trading Group

v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  "Because the judicial power of the

United States extends only to the resolution of cases and controversies, U.S. Const. art III, § 2,

courts have always required that a litigant have 'standing' to challenge the action sought to be

adjudicated."  Jackson-Bey v. Hanslmaeir, 115 F.3d 1091, 1095 (2d Cir. 1997) (*citing* Arizonans

for Official English v. Arizona, 520 U.S. 43, 64 (1997)).  "The party invoking federal

jurisdiction bears the burden of establishing [the elements of standing]."  Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992).

Courts consider three elements to determine whether a plaintiff has met its burden

to prove it has standing:

> "[T]o satisfy Article III's standing requirements, a plaintiff must
> show (1) it has suffered an 'injury in fact' that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) the injury is fairly traceable to the challenged
> action of the defendant; and 3) it is likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable
> decision."

Friends of the Earth, Incorporated v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000) (*citing* Lujan, 504 U.S. at 560-61). "[A]n assignee of a claim has standing to assert the injury in fact suffered by the assignor." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 774 (2000).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. . . . [J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it". Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotations omitted). To the extent that a defendant's motion places jurisdictional facts in dispute, the court may consider evidence outside the pleadings. *See* Amidax Trading, 671 F.3d at 145. By contrast, when a defendant makes a facial challenge to standing, courts are limited to consideration of the allegations of the complaint, and any documents either incorporated by reference into, or attached as exhibits to, the complaint. MSP Recovery Claims, Series LLC v. New York Central Mutual Fires Insurance Co., 2019 WL 4222654, *2 n.2 (N.D.N.Y. 2019). Here, given defendants' papers and the parties' oral arguments, I ordered plaintiffs to submit evidence in admissible form to demonstrate their entitlement to standing. Accordingly, I treat defendants' motion as a factual challenge.

**B. The Medicare Secondary Payer Act**

Originally effective in 1980, and subsequently amended, the MSPA prohibits Medicare, including Medicare Advantage Organizations, from paying for covered medical items or services where a primary payer exists. 42 U.S.C. § 1395y(b)(2)(A)(ii). In essence, the MSPA makes Medicare coverage secondary to other sources of coverage for medical expenses. Primary payers include group health plans, liability insurance policies, and no-fault insurance, among

others.  42 U.S.C. § 1395y(b)(2)(A).  However, Medicare is permitted to make a conditional

payment for covered items or services if the primary plan "has not made or cannot reasonably be

expected to make payment . . . promptly".  42 U.S.C. § 1395y(b)(2)(B)(i).  Such payments are

"conditioned on reimbursement" in accordance with other provision of the MSPA.  Id.  A

primary plan "shall reimburse" Medicare "if it is demonstrated that such primary plan has or had

a responsibility to make payment" for the item or service. 42 U.S.C. 1395y(b)(2)(B)(ii).  The

MSPA includes enforcement provisions in favor to the United States and others:

> "In order to recover payment made under this subchapter for an
> item or service, the United States may bring an action against any
> or all entities that are or were required or responsible . . . to make
> payment with respect to the same item or service (or any portion
> thereof) under a primary plan."

42 U.S.C. § 1395y(b)(2)(B)(iii).

> "There is established a private cause of action for damages (which
> shall be in an amount double the amount otherwise provided) in
> the case of a primary plan which fails to provide for primary
> payment (or appropriate reimbursement) in accordance with
> paragraphs (1) and (2)(A)."

42 U.S.C. § 1395y(b)(3)(A).  MAOs, and therefore their assignees, are entitled to seek

reimbursement for conditional payments pursuant to the MSPA's private right of action.

Humana Medical Plan, Inc. v. Western Heritage Insurance Co., 832 F.3d 1229, 1238 (11th Cir.

2016); MSP Recovery Claims Series LLC v. Ace American Insurance, 974 F.3d 1305, 1316

(11th Cir. 2020).

### C.  Did Plaintiffs Demonstrate Standing?

MSP Recovery Claims, Series LLC v. New York Central Mutual Fire Insurance

Company, 2019 WL 4222654 (N.D.N.Y. 2019) and MSP Recovery Claims, Series LLC, v.

- 10 -

Technology Insurance Company, 2020 WL 91540 (S.D.N.Y. 2020) involved the same plaintiffs,

and similar issues and arguments.  The Second Circuit has not yet, so far as I am aware,

addressed these issues.  Without Second Circuit authority to guide my analysis, and

notwithstanding that both of these cases involved a facial, rather than a factual, challenge to

plaintiffs' standing, I find the analysis of both cases persuasive and begin my analysis there.

   The court's analysis in New York Central Mutual highlights the potential

deficiencies in the Amended Complaint that plaintiffs' supplemental evidentiary submissions

may satisfy.   There, the court considered a motion to dismiss an action brought by the same

plaintiffs against a different insurance company.  The complaint, assignment agreements, facts,

and arguments both for and against defendants' motion to dismiss were similar to those here.

The court held that plaintiffs failed to properly allege that they were assigned the right to sue

based upon the exemplar claim (R.L.) included in that complaint.  Id. at *5.  First, plaintiffs

failed "to actually allege whether R.L.'s claim was included in the assignment agreement.

Although the complaint broadly asserted that HIPGNY assigned "all rights to recover conditional

payments" to  MSP Recovery and to Series 16-08-483, the assignment agreement demonstrated

that it assigned "only the Assigned Medicare Recovery Claims, and excluded the Assignor

Retained Claims from the assignment".  Id. at *5.  The court found this deficiency fatal to

plaintiffs' claims:

> "There is nothing in the record to show whether the R.L. claim is
> one of the 'Assigned Medicare Recovery Claims' or one of the
> 'Assignor Retained Claims.'  Thus, the Court agrees with
> Defendant that '[t]here is no way to identify whether the R.L.
> claim – the exemplar claim here – has been assigned.' . . . That
> ambiguity is fatal to Plaintiff's claim that they have standing and
> the case must be dismissed for lack of jurisdiction.

Id. at *6.  The court noted further that MSP Series is not a party to any of the alleged assignment

agreements:

> "Nothing in the Complaint or its Exhibits suggests that MSP
> Recovery Claims, Series LLC received HIPGNY's right to sue
> under the MSPA.  To the extent that Plaintiffs are arguing that
> MSP Recovery Claims, Series LLC has standing to sue because
> Series 16-08-483 is its Series, such an argument is an abuse of
> corporate form and has been rejected by another court considering
> these claims."

Id., citing MSP Recovery Claims, Series LLC v. USAA General Indemnity Co., 2018 WL

5112998, *12 (S.D. Fla. 2018) (citing Delaware case law to demonstrate that a series entity is

similar to a corporation with subsidiaries, and parent corporations lack standing to sue on behalf

of their subsidiaries, but refusing to consider the corporate documents attached to plaintiff's

opposing papers because defendants' attach to standing was facial, rather than factual, and the

documents were not referenced in, or attached to, the complaint).

Plaintiffs' evidentiary submissions address at least some of the deficiencies that

the court identified in New York Central Mutual, and that defendants raise here.  I address them

in turn.

### 1.    Is MSP Series a Proper Party?

I address first whether plaintiff MSP Series is a proper party.[2]  Defendants seek

dismissal as to MSP Series, arguing that it lacks standing and is not a proper party for two

reasons: 1) it was not a named assignee in the Assignment; and 2) the "parent" LLC of a series

LLC does not, pursuant to Delaware law, retain the right to sue on behalf of its series.

Defendants' Memorandum of Law [37-3], pp. 14-16.  I find that plaintiffs' evidentiary

---

[2] Defendants do not contest that Series 16-08-483 is a proper party pursuant to the Assignment.

submission satisfies their burden to demonstrate that MSP Series is a proper party because it

retained in its Operating Agreement the right to sue on behalf its series, including Series 16-08-

483.

I agree with defendants that MSP Series is not a named assignee in any of the

assignment agreements before the court.  However, that is not the end of the analysis.

Both parties make arguments concerning the ability of Series 16-08-483 to sue and be sued based

upon the version of 6 Delaware Code, section 18-215 in effect at the time.[3]  Delaware law

permits a limited liability company to establish any number of "series":

> "A limited liability company agreement may establish or provide
> for the establishment of 1 or more designated series of . . . limited
> liability company interests or assets.  Any such series may have
> separate rights, powers or duties with respect to specified property
> or obligations of the limited liability company or profits and losses
> associated with specified property or obligations, and any such
> series may have a separate business purpose or investment
> objective."

6 Del. C. § 18-215 (a) (effective August 2, 2016 to July 13, 2019).  Subsection (b) permits

further limitation of liability, provided that specific provisions are incorporated into the parent

LLC's operating agreement and in the certificate of formation of the series LLC, and the way the

records of the company account for the assets of each series.  6. Del. C. § 18-215 (b) (effective

August 2, 2016 to July 13, 2019).  Subsection (c) provides that, "[u]nless otherwise provided in a

limited liability company agreement, a series established in accordance with subsection (b) of

this section shall have the power and capacity to, in its own name . . . sue and be sued".  6. Del.

C. § 18-215 (c) (effective August 2, 2016 to July 13, 2019). Plaintiffs submitted MSP Series'

---

[3] 6 Del. C. § 18-215 was amended, effective August 1, 2019.  The version of the statute relied upon by the parties in their briefing was in effect from August 1, 2016 and July 31, 2019.  Plaintiffs filed this action on September 4, 2018.  *See* Complaint [1].

Amended and Restated Limited Liability Company Operating Agreement ("Operating

Agreement") as an exhibit to the Lopez Affidavit.  Lopez Affidavit [58-2], Exhibit E, pp. 25 to

52 of 58 (CM/ECF pagination). Mr. Lopez certified that the Operating Agreement is a business

record of MSP Recovery, which includes the records of MSP Series and Series 16-08-483.  Id. at

2, ¶¶ 5-6.  The Operating Agreement provides for the creation of "any number of designated

series" in accordance with 6 Del. C. §18-215, including Series 16-08-483.  Id., pp. 32-33, 49 of

58 (CM/ECF pagination).  Seemingly in accordance with 6 Del. C. §18-215(b), the Operating

Agreement provides that MSP Series (defined as the "Company"):

> "will maintain records for any such Series and account for the
> assets associated with such Series separately for the assets of the
> Company or any other Series in accordance with the Act.  The
> debts, liabilities and obligations incurred, contracted for or
> otherwise existing with respect to a particular Series will be
> enforceable against the assets of such Series only, and not against
> the assets of the Company generally or any other Series".

Id., p. 33 of 58 (CM/ECF pagination).  However, with respect to Series 16-08-483's right to sue,

the Operating Agreement provides that:

> "[T]he Company will own and control any and all Series as
> provided for in this Agreement.  Accordingly, (i) the Company will
> maintain the legal right to sue on behalf of each Series and be
> entitled to pursue any and all rights, benefits, and causes of action
> arising from assignments to a Series, and (ii) the Company may in
> its own name, or in the name of the Series, seek reimbursement of
> Medicare payments made by assignors.  Any claim or suit capable
> of being asserted or brough by a Series may be brought by the
> Company in its own name or it may elect to bring suit in the name
> of the designated Series."

Id.

Plaintiffs claim that paragraphs 53 through 56 of the Amended Complaint

"specify" that Series 16-08-483 "does not satisfy the conditions of § 18-215(b) and thereby is

merely a subset of [MSP Series], rather than an "independent entity".  Plaintiffs' Memorandum

of Law [47], p. 12.  Citing <u>MSP Recovery Claims, Series LLC v. Farmers Insurance Exchange</u>,
2018 SL 5086623 (C.D. Cal. 2018), plaintiffs urge this court to focus on the language of the LLC
agreement. Plaintiffs' Memorandum of Law [47], p. 13.  Defendants, citing <u>USAA General</u>,
<u>supra</u>, and <u>Hartsel v. Vanguard Group, Inc.</u>, 2011 WL 2421003 (Del. Ch. 2011) urge this court to
interpret plaintiffs' allegations as "an abuse of corporate form" that "confuse the issue of
standing" because Series 16-08-483 is a separate entity that can sue in its own name.
Defendants' Memorandum of Law [37-3], p. 15; Reply Memorandum of Law [48], pp. 8-9.

          Although I am unaware of any Delaware case analyzing whether a "parent" of a
series has standing to sue on behalf of its series, other courts considering this issue as part of
both facial and factual challenges focus on the terms of the LLC's operating agreement.  For
example, <u>Farmers</u>, <u>supra</u>, involved plaintiff MSP Series attempting to sue on behalf of Series 16-
08-483, among others.  There, as here, plaintiffs alleged in their complaint that MSP Series
maintained the legal right to sue on behalf of its designated series LLCs through its LLC
agreement.  <u>Id.</u> at *13.  Although the LLC agreement was not attached to the complaint,
plaintiffs there attached MSP Series' amended LLC agreement to their papers opposing
defendants' motion to dismiss.  The court considered the terms of the amendment to MSP Series'
operating agreement and found it sufficient to demonstrate MSP Series' standing:

> "In opposition to the instant motions, plaintiffs have also attached
> an amendment to MSP Recovery Claims, Series LLC's operating
> agreement, which provides in pertinent part that 'the Company is
> authorized to pursue or assert any claim or suit capable of being
> asserted  by any designated series arising from, or by virtue of, an
> assignment to a designated series.'"

<u>Id.</u> at *13.  Treating the submission as a Rule 15(d) supplemental pleading, the <u>Farmers</u> court
found the agreement was "sufficient to demonstrate plaintiff's standing to assert claims on behalf
of its series assignees".  <u>Id.</u> at *14.

The court in <u>USAA General</u>, cited by defendants, reached an opposite conclusion, but applied the same principles. There, plaintiffs' complaint did not contain allegations explaining how MSP Series could sue on behalf of its series. Although plaintiff there attached its limited liability and other agreements to its opposition papers, the court determined it was not permitted to consider them. The plaintiffs did not reference the agreements in their complaint and, because defendants had mounted a facial attack to plaintiffs' standing, the court was limited to the allegations in the complaint to determine whether plaintiff had standing. <u>USAA General</u>, 2018 WL 5113995 at *12. Left with nothing to the contrary, the court applied the general principle that "[a] 'series' entity is similar to a corporation with subsidiaries . . . and parent corporations lack standing to sue on behalf of their subsidiaries". <u>Id.</u>

Here, in contrast to the motion the court considered in <u>USAA General</u>, defendants assert a factual challenge to standing *and* a complaint that includes allegations concerning the terms of MSP Series' operating agreement. Accordingly, I agree with plaintiffs that the correct approach here is to refer to the Operating Agreement, submitted here in evidentiary form. *See* <u>R&R Capital, LLC v. Buck & Doe Run Valley Farms, LLC</u>, 2008 WL 3846319, *4 (Del. Ch. 2008) (noting that Delaware's LLC Act "explicitly provides that it is the policy of this chapter to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements" (internal alterations omitted)). Although the parties here appear to disagree under which subsection of 6 Del. C. § 18-215 Series 16-08-483 was formed, I find that the Operating Agreement is controlling, regardless of which subsection applies. Subsection (a) provides that "[a] limited liability company agreement may establish . . . 1 or more designated series of . . . limited liability company interests or assets". <u>Id.</u> Subsection (a) provides that a series "**may**" (but not "must" or "shall"), have "separate rights, powers or duties"

- 16 -

with respect to certain property of the LLC.  Id. (emphasis added).  Subsection (c) provides that series established pursuant to subsection (b) "shall" have the power to sue, "**[u]nless otherwise provided** in a limited liability company agreement".  Id. (emphasis added).  Neither subsection prohibits the ability of a limited liability company to retain the right to sue on behalf of its series.

Here, the Operating Agreement explicitly reserves to MSP Series "the legal right to sue on behalf of each Series" and to "seek reimbursement of Medicare payments made by assignors" "in its own name, or in the name of the Series".  Operating Agreement [58-2], p. 33 of 58 (CM/ECF pagination).  Accordingly, plaintiffs here remedied with their supplemental submission the deficiency identified by the court in New York Central Mutual, supra, and I find that MSP Series is a proper plaintiff in this action and has standing to assert the rights, if any, assigned to Series 16-08-493 in the Assignment.

### 2. Does the Record Demonstrate that the Exemplar Claims were Assigned or Retained?

Next, I consider defendants' arguments related to whether the plaintiffs satisfy the "injury in fact" requirement with respect to the exemplar claims. Defendants focus on the language of the Assignment, arguing that plaintiffs cannot demonstrate an injury in fact because the language of the assignment is too vague to enable a reader to ascertain whether the exemplar claims, or any others, were assigned.  Defendants' Memorandum of Law [37], pp. 12-14; Reply Memorandum of Law [48], pp. 1-3.  Defendants' arguments implicate two issues, addressed in turn below:  1) whether the assignments are facially invalid; and 2) whether plaintiffs satisfied their burden to affirmatively demonstrate the exemplar claims are included in the assigned claims. As explained below, I find the assignments are not facially invalid.  However, I recommend that the court grant defendants' motion, without prejudice, because plaintiffs have

failed to satisfy their burden to demonstrate the exemplar claims were included in the assigned claims.

### a.    Is the Assignment Invalid?

I reject defendants' argument that the Assignment is invalid because the document itself does not permit the identification of either assigned or retained claims without reference to materials outside the assignment itself.  Defendants' Memorandum of Law [37-3] , pp. 12-14; Reply Memorandum of Law [48], pp. 1-3.  Defendants have not cited any case that demonstrates - or even suggests - that the language of the Assignment is so vague as to void the agreement.  Defendants cite Hyde & Hyde, Incorporated v. Mount Franklin Foods, 523 Fed. Appx. 301 (5th Cir. 2013) to support the general proposition that "[b]road pronouncements do not describe the assignment of claims 'with such particularity as to render [them] capable of identification'".  Id. at 306 (quoting Schoonmaker v. Lawrence Brunoli, Inc., 828 A.2d 64, 79 (Conn. 2003)); see Defendants' Memorandum of Law [37], p. 13.  Hyde & Hyde involved a settlement agreement concerning an equipment lease that assigned to appellants "all of [GE Capital's] rights and interests, if any, in the Equipment".  Id., 523 Fed.Appx. at 302.  There, the issue was whether that sentence effectively assigned to the appellant GE Capital's tort claim for conversion of the equipment.  Finding that it did not, the court reasoned:

> "The agreement itself makes no reference at all to conveying GE Capital's claims. . . .   It is not enough that the language of an assignment conceptually encompass whatever claim is at issue. Rather, Connecticut law requires specificity."

Id. at 306.  This argument has been considered, and likewise rejected, by other courts considering similar assignments:

> "[B]y its plain language, the agreement demonstrates a clear intent to assign MSPA claims arising between January 2009 and May 2017.  The parties will be able to more specifically define, through

> discovery, the exact universe of claims that Plaintiffs believe may
> fall within the purview of the assignment.  If Plaintiffs are unable
> to do so, Defendant may, of course, revisit this issue at later stages
> in the proceedings."

MSP Recovery Claims, Series LLC v. The Phoenix Insurance Company, 426 F.Supp.3d 458, 477

(N.D. Ohio 2019).  *See also* MSP Recovery Claims, Series LLC v. Grange Insurance Company,

2019 WL 6770729, *11 (N.D. Ohio 2019) ("the Court rejects Defendant's argument that the

Recovery Agreement is not a 'true assignment' because it fails to specifically identify individual

claims and/or Medicare beneficiaries.  Defendant cites no legal authority for the proposition that

this level of specificity is required in the *assignment* itself" (emphasis in original)).  Here, the

Assignment specifically identifies, defines, and assigns to nonparty MSP Recovery and to Series

16-08-483 its right to pursue claims arising under the MSPA:

> Assignor hereby irrevocably assigns, transfers, conveys, sets over
> and delivers to Assignee, and any of its successors and assigns, any
> and all of Assignor's right, title, ownership and interest in and to
> all Assigned Medicare Recovery Claims, whether based in
> contract, tort, statutory right, and any and all rights (including, but
> not limited to, subrogation) to pursue and/or recover monies that
> Assignor had, may have had, or has asserted against any party in
> connection with the Assigned Medicare Recovery Claims and all
> rights and claims against primary payers and/or, subject to the
> definition of Assigned Medicare Recovery Claims, third parties
> that may be liable to Assignor arising from or relating to the
> Assigned Medicare Recovery Claims, including claims under
> consumer protection statutes and laws, and all information relating
> thereto, as may be applicable.

Assignment [58-1], p. 7 of 18 (CM/ECF pagination), ¶ 2.b.

The remaining cases that defendants cite in support of this point ([37-3], pp. 13-

14) do not discuss the language of the Assignment that excludes certain retained claims from the

definition of "Assigned Medicare Recovery Claims".  Rather, the cases cited by defendants

relate to assignments that were found ineffective because the assignor, an entity named Health

First Administrative Plans or "HFAP", did not actually own the assigned MSP claims.  HFAP

administered MAO benefits on behalf of a related entity named Health First Health Plans, Inc.,

or "HFHP", which actually owned the MSP claims.  Courts in those cases discussed the

plaintiffs' efforts to rectify that error, *nunc pro tunc*, with other, additional agreements signed

after those lawsuits were commenced, but purporting to have earlier effective dates.  Here, we do

not have an issue similar to the HFAP vs. HFHP issue or a belated attempt to rectify such an

error.  Defendants do not dispute that HIPGNY was able to assign its rights to pursue its claims

under the MSPA.

        Further, many of the cases cited by defendants in this section of their

Memorandum have since been reversed, distinguished, or vacated in relevant part by the Court of

Appeals.  For example, the Eleventh Circuit distinguished USAA General, supra, relied upon by

defendants,  in MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1219

(11th Cir. 2020) ("[i]t thus makes sense that the USAA court limited its examination of the Nunc

Pro Tunc Assignment to the document's value as parol evidence, whereas a court faced with a

complaint filed after this document was executed could consider it for its substance").  The

Seventh Circuit in MAO-MSO Recovery II, LLC v. State Farm Mutual Auto Insurance Co., 935

F.3d 573 (7th Cir. 2019) reversed the District Court's imposition of sanctions, and its dismissal

of the case with prejudice (2018 WL 2732106).  *See* State Farm Mutual, 935 F.3d at 584 ("[w]e

are hard-pressed to see any indication of intentional misrepresentation in this confused and

confusing record . . . Without knowledge of the HFAP/Health First Health distinction, most of

the supposed misrepresentations in the earlier filings regarding HFAP's status as a [MAO] or as

the payer of R.Y.'s medical bills look more like honest mistakes").  Both MSP Recovery Claims,

Series LLC v. Travelers Casualty and Surety Co., 2018 WL 3599360 (S.D. Fla. 2018) and MSP

- 20 -

<u>Recovery Claims, Series LLC v. Auto-Owners Insurance Co.</u>, 2018 WL 1953861 (S.D. Fla. 2018), cited by defendants ([37-3], p.14) likewise involved the HFAP assignment.  In both cases, the Eleventh Circuit affirmed the District Court's dismissal of plaintiffs' claims, but modified them to be without prejudice.

Accordingly, I find that the Assignment here is valid.

### b.    Did Plaintiffs Satisfy Their Burden to Demonstrate the Exemplar Claims were Included in the Assigned Claims?

Next, I consider whether plaintiffs' submissions affirmatively established that the exemplar claims identified in the complaint were included in the Assigned Claims.  The Assignment excludes from the Assigned Claims certain Assignor Retained Claims.  Although plaintiffs' submissions demonstrate that the exemplar claims were not excluded from the Assigned Claims, I find that the plaintiffs' submissions nonetheless fail to satisfy their evidentiary burden.  Neither the Amended Complaint nor the supplementary evidentiary submissions state the date upon which HIPGNY paid for the medical services allegedly provided to the exemplar beneficiaries.

First, the Assignment at issue here, which is authenticated by both the Manalansan Declaration and the Lopez Affidavit, contains assignment language identical to the language the court considered in <u>New York Central Mutual</u> concerning which claims are assigned and which are excluded from the assignment to Series 16-08-483 and nonparty MSP Recovery:

> "Assignor wishes to assign to Assignee all right, title, interest in and ownership of Medicare Recovery Claims . . . excluding Medicare Recovery Claims that, as of the Effective Date, have been assigned to and/or are being pursued by other recovery vendors, including, but not limited to, The Rawlings Group – related to Medicare Health Care Services that were rendered and

> paid for by Assignor during the six (6) year period beginning
> September 29, 2011 and ending September 29, 2017".

Assignment [58-1], p. 6 of 18 (CM/ECF pagination). The Manalansan Affidavit affirmatively

asserts that: "Rawlings did not pursue claims relating to R.A., J.O., and K.Y. prior to the

Effective Date of the Assignment (March 20, 2018)"; "each of those claims is included among

the 'Assigned Medicare Recovery Claims' conveyed under the Assignment"; and "no other

person, entity, or recovery vendor – including The Rawlings Group – has the legal right to

pursue the R.A., J.O., and K.Y. claims against Merchants on behalf of HIPGNY". Manalansan

Affidavit [58-1], p. 3, ¶¶ 11, 13, 14. Mr. Manalansan based his statements upon his knowledge

of HIPGNY's contract agreements and his review of "information provided to HIPGNY by The

Rawlings Group". Id., pp. 2-3, ¶¶4, 11.

      These statements, made in evidentiary form, remedy the first deficiency identified

in New York Central Mutual, that the Amended Complaint fails to allege that the exemplar

claims were never assigned to The Rawlings Group or any other vendor, and, therefore, were not

excluded from the assignment for this reason. I find that the Manalansan Declaration satisfied

plaintiff's burden to demonstrate that the R.A., J.O., and K.Y. claims were not previously

assigned and/or pursued by other recovery vendors.

      Regardless of whether plaintiffs have any other claims against defendants

pursuant to the Assignment, plaintiffs' evidentiary submissions establish, at the very least, that

the exemplar claims cited here were not excluded from the Assigned Medicare Recovery Claims

and retained by HIPGNY due to prior assignment to The Rawlings Group or another recovery

vendor.

      The issue plaintiffs have failed to remedy with their evidentiary submissions,

however, is whether the claims were included in the Assigned Medicare Recovery Claims in the

first instance.  The Southern District of New York's decision in <u>Technology Insurance</u>, <u>supra</u>, highlights this issue.  There, plaintiffs MSP Series and Series 16-08-483 made claims pursuant to the MSPA similar to those alleged here.  The assignment agreement under consideration there assigned rights concerning "Medicare health care services that were rendered and paid for by HIP during the six . . . year period beginning September 29, 2011 and ending September 29, 2017."  <u>Id.</u> at *2 (internal alterations omitted).  Further, like the Assignment at issue here, that assignment agreement also excluded claims that were "assigned to and/or are being pursued by other recovery vendors".  <u>Id.</u>  The defendants mounted a Rule 12(b)(1) facial challenge to plaintiffs' standing to sue.  <u>Id.</u> at *1, *3.  Specifically, defendants there argued  that the complaint did not "adequately allege facts sufficient to show that the claims asserted in the complaint fall within the scope of that assignment".  The court agreed:

> "The Complaint does not specify the date on which HIP paid for any charges. . . . Without this information, the Court cannot assess whether any of the representative claims actually fall within the scope of the assignment, and therefore, whether Plaintiffs have standing to sue.  As a result, Plaintiffs' claim is merely 'conjectural or hypothetical' and not 'concrete and particularized.' *Lujan*, 504 U.S. at 560."

<u>Id.</u> at *3.  The court there also noted that plaintiffs there also failed to allege in their complaint with respect to several of the exemplar claims "when an accident giving rise to the conditional payments occurred" and "that the representative claims were never assigned to or are being pursued by other recovery vendors".  <u>Id.</u> at *4.

Here, plaintiffs allege in their Amended Complaint the dates of the accidents or injuries sustained by each of the exemplar beneficiaries, and the date of the medical services allegedly provided to them.  *See* Amended Complaint [19], ¶¶ 8, 9, 15, 16, 22, 23.  Further, the Amended Complaint alleges that HIPGNY paid for those services.  <u>Id.</u>, ¶¶ 10, 17, 24.  It does

not, however, state **when** HIPGNY paid for those expenses.  *See* id.  None of the exhibits

attached to the Amended Complaint appear to identify the date of HIPGNY's payment.  Without

this information, I cannot determine whether plaintiffs' claims related to the exemplar

beneficiaries fall within the assigned claims, which the Assignment defines as those related to

medical services "that were rendered **and paid for**" by HIPGNY between September 29, 2011

and September 29, 2017.  Assignment [58-1], p. 6 of 18 (CM/ECF pagination) (emphasis added).

       Plaintiffs' evidentiary submissions do not remedy this deficiency or satisfy their

burden to demonstrate standing.  "A plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists . . . . [J]urisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it".  Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir.

2008) (internal citations and quotations omitted).

       Mr. Manalansan does not state in his declaration when HIPGNY paid for the

services identified in the exemplar claims.  The Miranda Affidavit likewise fails to provide this

information.  Mr. Miranda reviewed information in the MSP computer system concerning the

R.A, J.O., and K.Y. claims.  Although Mr. Miranda states that R.A., J.O., and K.Y. were

"enrolled in an HMO Medicare Advantage plan operated by HIPGNY" (id. ¶ 15), he does not

state when HIPGNY paid for the services identified in the exemplar claims.

       Accordingly, plaintiffs did not meet their burden to affirmatively demonstrate that

the exemplar claims were part of the Assigned Claims.  Because plaintiffs have not met their

burden on this record, I recommend that the court dismiss plaintiff's Amended Complaint.  Such

a dismissal must be without prejudice.  *See* Katz v. Donna Karan Company, L.L.C., 872 F.3d

114, 121 (2d Cir. 2017) ("where a case is dismissed for lack of Article III standing, as here, that

disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*")
(emphasis in original)).  Further, I decline to consider defendants' arguments under Rule
12(b)(6) because "without jurisdiction, the district court lacks the power to adjudicate the merits
of the case".  Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 54-55 (2d Cir. 2016).


## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss for lack of
subject matter jurisdiction [37] be granted, without prejudice.  Unless otherwise ordered by
District Judge Sinatra, any objections to this Report and Recommendation must be filed with the
clerk of this court by December 4, 2020. Any requests for extension of this deadline must be
made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further
judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988);
Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,
case law and/or evidentiary material which could have been, but were not, presented to the
magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal
Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local
Rules of Civil Procedure, written objections shall "specifically identify the portions of the
proposed findings and recommendations to which objection is made and the basis for each
objection . . . supported by legal authority", and must include "a written statement either
certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 20, 2020

JEREMIAH J. MCCARTHY
United States Magistrate Judge