UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MSP RECOVERY CLAIMS, SERIES LLC, a
Delaware limited liability company; and SERIES                    **REPORT AND RECOMMENDATION**
16-08-483, a designated series of MSP Recovery
Claims, Series, LLC,

                                Plaintiffs,                    1:19-cv-524-JLS-JJM

v.

MERCHANTS MUTUAL INSURANCE
COMPANY, a Delaware corporation;
MERCHANTS NATIONAL INSURANCE
COMPANY, a New Hampshire corporation; and
MERCHANTS PREFERRED INSURANCE
COMPANY, a Delaware corporation,

                                Defendants.

_____

        Plaintiffs MSP Recovery Claims, Series LLC ("MSP Series") and Series 16-08-

483, a designated series of MSP Series ("Series 16-08-483") (collectively "MSP") commenced

this putative class action pursuant to 42 U.S.C. §1395y(b)(3)(A), the Medicare Secondary Payer

Act ("MSPA"). This is an action against a no-fault and liability insurer for reimbursement of

medical expenses paid by a Medicare Advantage Organization ("MAO"). Defendants

(collectively, "Merchants") issued automobile no-fault insurance policies to certain Medicare

beneficiaries that received Medicare benefits through an MAO: the Health Insurance Plan of

Greater New York ("HIPGNY"). HIPGNY assigned its claims for reimbursement under the

MSPA to MSP. MSP claims that Merchants owes them reimbursement for payments that

HIPGNY made for medical care provided to Merchants' policy holders and other claimants. *See*

Second Amended Class Action Complaint for Damages (the "Second Amended Complaint") [66]. [1]

Before the court is Merchants' motion to dismiss pursuant to Rule 12(b)(6) ([77, 116, 123]), which has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration ([50, 116, 123]). Having reviewed the parties' submissions ([77, 78, 79, 80, 81, 86, 87, 89, 90, 92, 94, 95, 129, 130, 135]) and heard oral argument ([136]), I recommend that the motion be granted.

## BACKGROUND

The facts and history of this case are outlined in my prior Report and Recommendations ([60, 96]) and in Judge Sinatra's Decision and Orders ([65, 123]) and incorporated here by reference. Following Judge Sinatra's Decision and Order finding subject matter jurisdiction and denying Merchants' motion to dismiss pursuant to Rule 12(b)(1), he permitted additional briefing on Merchants' motion to dismiss pursuant to Rule 12(b)(6). [115, 123]. I cite below only the facts relevant to that motion.

### A.    The Second Amended Complaint

MSP outlined in its Second Amended Complaint four exemplar claims related to Medicare beneficiaries R.A. ([66], ¶¶ 67-77), J.O. (id., ¶¶ 78-88), K.Y. (id., ¶¶ 89-99), and M.G. (id., ¶¶ 100-110). MSP alleges that Merchants issued a no-fault insurance policy to each of these beneficiaries that provided coverage for accident-related medical treatment. Id., ¶¶ 69, 80, 91,

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are CM/ECF pagination.

102.  For each of the exemplar claims, MSP provided the date of accident and information concerning the beneficiary's allegedly accident-related injuries and the medical services paid for by HIPGNY.  *See* id., ¶¶ 68-72, 79-83, 90-94, 101-105, and Exhibits G, H, I, and J.

> For example, with respect to exemplar R.A., MSP alleged:
>
> "67.  On November 30, 2011, R.A. was enrolled in a Medicare Advantage plan issued and administered by [HIPGNY]. . . .
>
> 68.  On November 30, 2011, R.A. was injured in an accident. . . .
>
> 69.  At the time of the accident, R.A.'s accident-related medical costs and expenses were covered under a no-fault policy (Policy No. PAPI052565) issued by [Merchants].  By virtue of its policy, Defendants were contractually obligated to pay and provide primary coverage for R.A.'s accident related medical expenses.
>
> * * *
>
> 71. The medical services were rendered on November 30, 2011. The medical providers subsequently issued to HIPGNY bills for payment of R.A.'s accident-related medical expenses.
>
> 72. The medical providers billed and charged HIPGNY $702.00 for R.A.'s accident-related medical expenses, of which HIPGNY paid $195.00. . . .
>
> 73.  Defendant [Merchants] is liable to pay the billed amount by virtue of its no-fault policy which covered R.A. for the accident-related medical expenses . . . Defendant [Merchants] was primarily responsible for the costs of R.A.'s accident-related medical expenses. Defendant [Merchants] reported its primary payer responsibility to CMS . . . Despite its reporting, and the corresponding admission that it should have paid for R.A.'s medical items and services[,]  Defendant [Merchants] has failed to do so."

[66], ¶¶67-73.  The allegations for the other exemplar beneficiaries are similar. *See* id., ¶¶ 78-88 (J.O.), 89-99 (K.Y.), 100-110 (M.G.).

> MSP's claims go beyond those of the four exemplars.  MSP incorporated into the Second Amended Complaint claims concerning forty-five beneficiaries.  *See* [66], ¶ 50; *see also*

Exhibit F to Second Amended Complaint [66-6]. As the exhibit demonstrates, most of MSP's claims relate to no-fault insurance policies (including the claims of R.A., J.O., and K.Y.).[2] Eight of the identified claims involve "other liability insurance" allegedly provided by Merchants. [66-6]. MSP alleges that these other policies are related to "settlement agreements" with beneficiaries. [66], ¶ 53.

## B.    Merchants' Motion to Dismiss

Merchants argues that the MSPA does not preempt the claims filing provisions of its no-fault insurance policies. [135] at 10. It points to "conditions precedent to the right to payment under the policy" that are incorporated into no-fault policies in New York, as required by New York's Insurance Law and accompanying regulations. *See* [81] at 12; *see also* id. at 10-13, 15-19; N.Y. Ins. §§301, 5103; N.Y. Veh. & Traf. §§ 311-12; 11 N.Y.C.R.R. §65-1.1.

Merchants argues that MSP failed to state a cause of action because it did not allege that HIPGNY (or anyone else) submitted claims for payment to Merchants as required by the policies and New York Insurance Law, or otherwise try to coordinate benefits. [129] at 10. It further argues that MSP failed to "allege sufficient facts to show that the payments made by [HIPGNY] were eligible for reimbursement". Id. at 11. Such facts would include that "the alleged claims were submitted in accordance with the policies". Id. Finally, it argues that the MSPA does not preempt the claims filing provisions of New York's no-fault statute, which proscribes the terms of no-fault policies offered in New York. [135] at 8-10.

---

[2]    Exhibit F contains the policy numbers associated with exemplars R.A. (PAPI052565), J.O. (PAP8641966), and K.Y. (PAP 4453089), but does not appear to contain the policy number for exemplar M.G. (BOPI051576). *Compare* [66], ¶¶ 69, 80, 91, 102 *with* [66-6].

MSP responds that the Second Amended Complaint adequately pleads the elements of a claim for reimbursement under the MSPA. [130] at 5-6, 9. MSP alleges that by making mandatory reports to the Centers for Medicare and Medicaid Services ("CMS") under the MSPA (known as "Section 111" reporting), Merchants "acknowledged their primary payer status to CMS". Id. at 7. It cites the caselaw relied upon by Judge Sinatra in his rule 12(b)(1) analysis to support its argument that its allegations state sufficient facts to state a plausible claim and survive a motion to dismiss under Rule 12(b)(6). *See* id. at 8 and [123] at 3 (both citing MSP Recovery Claims, Series 44 LLC v. Hanover Ins. Grp. Inc., 2023 WL 65160457, *8 (D. Mass. 2023) and MSP Recovery Claims Series 44, LLC v. Bunker Hill Ins. Co., 683 F.Supp.3d 172, 179 (D. Mass. 2023).

MSP also argues that the regulations promulgated under the MSPA preempt the claims filing requirements and time limitations incorporated into New York's no-fault insurance statutes and policies. [130] at 10. MSP contends that "if Plaintiffs sufficiently met their burden to demonstrate injury in fact for Article III standing, they certainly plausibly stated a claim under Rule 12(b)(6)". Id. at 4.

## DISCUSSION

### A.    Standard Governing a Motion to Dismiss

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that

are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. *See also* Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (*citing* Iqbal, supra).

In deciding whether to dismiss a complaint under Rule 12(b)(6), this court "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference". McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Courts may also take judicial notice of facts that are "not subject to reasonable dispute because [they]: (1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned". Prime Contractors, Inc. v. APS Contractors Inc., 754 F.Supp.3d 289, 301 (E.D.N.Y. 2024).

Finally, I must "assume that all well-pleaded factual allegations in the complaint are true unless they are contradicted by more specific allegations or documentary evidence." Vengalottore v. Cornell University, 36 F.4th 87, 112 (2d Cir. 2022) (internal alterations omitted). However, that rule is "inapplicable to legal conclusions". Iqbal, 556 U.S. at 678 (2009).

## B.    The MSPA

The MSPA makes Medicare coverage secondary to other sources of coverage for medical expenses. It prohibits Medicare, including MAOs, from paying for covered medical items or services where other insurance (*i.e.* a primary payer) exists. 42 U.S.C. §1395y(b)(2)(A)(ii). Primary payers include group health plans, liability insurance policies, and no-fault insurance, among others. 42 U.S.C. §1395y(b)(2)(A).

However, Medicare is permitted to make a conditional payment for covered items or services if the primary plan "has not made or cannot reasonably be expected to make payment . . . promptly". 42 U.S.C. §1395y(b)(2)(B)(i). Such payments are "conditioned on reimbursement". Id. A primary plan "shall reimburse" Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment" for the item or service. 42 U.S.C. §1395y(b)(2)(B)(ii). The MSPA permits private parties to enforce this provision:

> "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)."

42 U.S.C. §1395y(b)(3)(A). MAOs, and therefore their assignees, are entitled to seek reimbursement for conditional payments pursuant to the MSPA's private right of action. Humana Medical Plan, Inc. v. Western Heritage Insurance Co., 832 F.3d 1229, 1238 (11th Cir. 2016); MSP Recovery Claims Series LLC v. Ace American Insurance Company, 974 F.3d 1305, 1316 (11th Cir. 2020), cert denied, 141 S.Ct. 2758 (2021).

To enable Medicare to determine when another plan provides primary coverage for a beneficiary's medical expenses, the MSPA requires insurance plans providing liability and no fault insurance to:

> "(i) determine whether a claimant (including an individual whose claim is unresolved) is entitled to benefits under the program under this subchapter on any basis; and
>
> (ii) if the claimant is determined to be so entitled, submit the information described in subparagraph (B) with respect to the claimant to the Secretary".

42 U.S.C. §1395y(b)(8)(A); *see also* §1395y(b)(8)(F).  A "claimant" includes both individuals "filing a claim directly against the applicable plan" and those "filing a claim against an individual or entity insured or covered by the applicable plan".  42 U.S.C. §1395y(b)(8)(D).

       The Second Amended Complaint contains allegations concerning two types of insurance coverage: 1) no-fault insurance policies that provide benefits directly to policy-holders; and 2) liability coverage that provided settlement payments to third parties to resolve claims made against its insureds.  I address each type of coverage separately.

**C.**    **MSP Failed to State a Cause of Action for Reimbursement from Merchants' Liability Settlements**

       Judge Sinatra noted in his August 1, 2024 Decision and Order, and cited as the basis for his decision on standing, that MSP made several allegations in the Second Amended Complaint concerning settlements paid by Merchants:

> "53. . . . Defendants' settlement agreements show, at a minimum, that Defendants had constructive knowledge that they owed primary payments.
>
> ***
>
> 62. Defendants' knowledge that they owe primary payments is evidenced by their filings with HHS pursuant to 42 U.S.C. §1395y(b)(7)-(9) and the settlements reached between the Defendants and Plaintiffs' assigned enrollees.  By virtue of Defendants' own actions, settlements, and reporting, Defendants had actual and constructive knowledge of their primary payer obligations to Plaintiffs Assignors, the Class Members and the entire Medicare Advantage system."
>
> ***
>
> 65. For every instance that Defendants settled with a Medicare beneficiary enrolled in an MA plan administered by Plaintiffs' assignors and the Class Members, Defendants had constructive knowledge that they owed primary payments to Plaintiffs Assignors and the Class Members."

[66], ¶¶ 53, 62, 65; *see also* [123] at 3-4.  Judge Sinatra reasoned that these allegations

distinguish the claims considered by the Second Circuit in <u>Hereford</u>, <u>supra</u> and more closely

align with claims that the District Court for the District of Massachusetts considered in <u>Bunker</u>

<u>Hill</u>, <u>supra</u>, and <u>Hanover Insurance</u>, <u>supra</u>.  <u>Id.</u>

       Although these cases considered motions made under 12(b)(1), and not 12(b)(6),

they are still instructive to demonstrate why settlement payments made by a liability policy and

payment for medical treatment pursuant to a no-fault policy must be considered separately.  The

district court in <u>Bunker Hill</u> and <u>Hanover Insurance</u> permitted MSP's claims to go forward, while

the Second Circuit dismissed MSP's claims in <u>Hereford</u>.  The salient distinction between those

cases was the type of insurance coverage at issue and, therefore, the contract language under

which the insurer bore responsibility for medical payments.

       <u>Hereford</u> involved claims made pursuant to no-fault insurance policies.  <u>Hereford</u>,

66 F.4th at 82.  The operative contract was the no-fault insurance policy. There, MSP made

allegations similar to those made here.  It alleged that an exemplar beneficiary, N.G., was injured

in an accident, required medical care, was enrolled in an MAO, and was covered by a no-fault

policy issued by Hereford.  <u>Id.</u> at 83.  MSP alleged further that the MAO made payments for

N.G.'s medical care related to the accident and that Hereford reported N.G.'s claim to CMS

under Section 111.  <u>Id.</u>  MSP alleged that Hereford's reporting to CMS was an admission "that it

should have paid for N.G.'s accident-related injuries in the first instance", but had not

reimbursed the MAO.  MSP makes the same allegations here in its Second Amended Complaint.

*See* [66], ¶¶73, 84, 95, 106

       The Second Circuit held in <u>Hereford</u> that "the plain language of Section 111 tells

us that when a no-fault insurance provider such as Hereford reports a claim pursuant to Section

111, it does not thereby admit that it is liable for the claim". <u>Hereford</u>, 66 F.4th at 89. It

reasoned that MSP's allegations were insufficient to demonstrate Hereford's liability for the

payments made by the MAO because, for no-fault insurers, a "report under Section 111 does not

admit the insurer's liability for the claim reported". <u>Id.</u> at 87. It reasoned:

> "Section 111 requires primary plans to report more than the claims
> they are responsible for and fewer than all the claims they receive.
> For example, they need not report claims made by individuals
> covered under a no-fault policy but who, because of their youth
> (for instance), are ineligible for Medicare. But, as noted above,
> they must report claims made by individuals who may be eligible
> for coverage under the MSP Act 'on any basis,' even if the plan is
> ultimately not responsible for paying for those claims".

<u>Id.</u>

By contrast, both <u>Bunker Hill</u> and <u>Hanover Insurance</u> involved settlement

payments made under property and casualty insurance policies. Those payments were made to

settle claims made by Medicare beneficiaries allegedly injured by Bunker Hill's and Hanover

Insurance's insured policy holders. The operative contracts in that situation are the settlement

agreements and/or releases. The court in <u>Hanover Insurance</u> recognized that settlement

payments are meant to cover damages – including the cost of medical treatment – sustained by a

claimant:

> "By alleging that defendant provided settlement payments to A.D.
> and P.R., the complaint sufficiently alleges that certain medical
> expenses, items, or services related to the claims are reimbursable.
> That is sufficient – at least on a motion to dismiss for lack of
> jurisdiction – to satisfy the second factor, that [the MAO] paid
> reimbursable costs but did not receive reimbursement."

<u>Hanover Insurance</u>, 2023 WL 6160457 at *8.

The court explained why those allegations were important to its holding:

> "Those additional facts are potentially important, because the
> complaint alleges that '[w]hen Hanover executes a settlement

agreement with a person who is a Medicare beneficiary, Hanover becomes a primary payer that is responsible for the reimbursement of the medical services rendered to that person by an MAO.' . . . That contention may be derived from a portion of the statutory text that directs, '[a] primary plan's responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or release . . . for items or services included in a claim against the primary plan or the primary plan's insured.' 42 U.S.C. §1395y(b)(2)(B)(ii).  That is so 'whether or not there is a determination or admission of liability' for the settlement payment. *Id*.'."

Id. at *7.

Similarly, in Bunker Hill, MSP made allegations that "following L.P.'s claim against Defendants' insured, Defendants indemnified their insured tortfeasor and made payments pursuant to a settlement with L.P." Bunker Hill, 683 F.Supp.3d at 180.

Western Heritage, cited by MSP to demonstrate the elements needed to plead a cause of action for reimbursement under the MSPA ([130] at 6), also involved a settlement under a liability insurance policy.  There, the Eleventh Circuit considered the district court's finding of summary judgment in favor of an MAO seeking reimbursement from Western Heritage, a liability insurer.  Western Heritage settled a claim made by a Medicare beneficiary against its insured for a personal injury.  The court considered whether the MAO was entitled to summary judgment.  Western Heritage, 832 F.3d at 1231, 1239.  Concluding that it was, the court analyzed the relevant provisions of the MSPA and outlined the elements of such a claim:

"[A] plaintiff is entitled to summary judgment on a §1395y(b)(3)(A) claim when there is no genuine issue of material fact regarding (1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount."

Id.  The court also clarified that a "primary plan 'fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraph . . . (2)(A),' when it <u>fails to honor the underlying statutory or contractual obligation</u>".  <u>Id.</u> at 1237 (emphasis added).

Given the language of §1395y(b)(2)(B)(ii), to the extent that MSP claims that Merchants entered into settlement agreements with Medicare beneficiaries, I agree that MSP has alleged that Merchants is a primary plan ([66], ¶¶38, 50, 53, 62), and that Merchants failed to provide for "appropriate reimbursement" (*i.e.* repayment in compliance with §1395y(b)(2)(B)). It has not, however, identified any damages amount for any of the individuals identified in Exhibit F to the Second Amended Complaint to whom Merchants allegedly paid a settlement amount.

Because MSP alleges that HIPGNY "made conditional payments on behalf of each of those Medicare beneficiaries" identified in Exhibit F, it appears that they can plead damages amounts for those claims.  I therefore recommend that Merchants' motion be granted with respect to the liability settlement claims, with leave to further amend the complaint to assert a damages amount for each claim.

**D.    MSP Failed to Plead a Cause of Action for Reimbursement from No-Fault Insurance Policies**

Judge Sinatra's oral decision on May 2, 2024 identified several paragraphs of MSP's Second Amended Complaint that refer to no-fault insurance to support his determination that MSP sufficiently alleged that it sustained an injury-in-fact sufficient to confer standing.  *See* [117] at 4, *citing* [66], ¶¶1, 2, 9, 40, 41, 42, 49-51, 69 and 80.  As with my analysis of settlement agreements, I do not agree that Judge Sinatra's determination that MSP pleaded an injury-in-fact sufficient to confer standing automatically indicates that MSP sufficiently pleaded a cause of action.  Moreover, Judge Sinatra agreed that these analyses were not necessarily co-extensive, as

he requested further briefing on 12(b)(6) issues. *See* [117] at 6 ("we've got to do the 12(b)(6) part of your motion. Failure to state a claim is still open, alive. . . . I don't know where I'm going to come out on that").

Merchants argues that MSP failed to plausibly allege that Merchants owes reimbursement to HIPGNY because it did not plead any facts showing that anyone timely submitted a claim:

> "Plaintiffs have pleaded no facts whatsoever to support that the payments were reimbursable under the alleged no-fault policies, that the alleged claims were submitted in accordance with the policies and whether and how Merchants handled Plaintiffs' alleged claims".

[129] at 11; *see also* id. at 14 ("New York no-fault has multiple conditions precedent to eligibility of claims, and we have shown that no such claims have been timely submitted.").

It argues that treatment providers and insureds must follow the requirements of New York's no-fault law for it to be responsible to pay for an insured's accident-related treatment:

> "The MSPA does not eliminate the terms and conditions . . .
> underlying the New York no-fault law and regulations. Under the
> [MSPA], 'Medicare does not pay until the beneficiary has
> exhausted his or her remedies under no-fault insurance.' 42 C.F.R.
> §411.51(b). As this language indicates, the [MSPA] does not
> supersede an existing State insurance policy; it merely requires the
> exhaustion of the benefits under that policy. Except for making
> Medicare the secondary payer and private insurance the primary
> pater, the [MSPA] 'has never created or extended coverage; it has
> only dictated the order of payment when Medicare beneficiaries
> already have alternate sources of payment for health care.' Blue
> Cross & Blue Shield of Texas, Inc. v. Shalala, 995 F.2d 70, 73 (5th
> Cir. 1993)."

[81] at 16.

In New York, no-fault insurance providers are required to provide policies that include a Mandatory Personal Injury Protection Endorsement (New York). *See* 11 N.Y.C.R.R. §65-1.1(a), and (b)(1). The language of that endorsement is proscribed by regulation and states, in part:

> "Proof of Claim. Medical, Work Loss, and Other Necessary Expenses. In the case of a claim for health service expenses, the eligible injured person or that person's assignee or representative shall submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated, as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered".

11 N.Y.C.R.R. §65-1.1(d).

MSP argues that MSPA §1395y(b)(2)(B)(vi) and regulation 42 C.F.R. §411.24(f)(1) preempts these requirements. [130] at 10. I do not agree. By its plain language, §1395y(b)(2)(B)(vi) applies only to the <u>government's</u> ability to recover secondary payments from <u>employer group health plans</u>:

> "Notwithstanding any other time limits that may exist for filing a claim <u>under an employer group health plan</u>, <u>the United States</u> may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished."

42 U.S.C. §1395y(b)(2)(B)(vi) (emphasis added). MSP provides no support for its assertion that this section applies to an MAO's claims for reimbursement against a no-fault insurer pursuant to the private cause of action provision. *Cf.* <u>MSP Recovery Claims, Series LLC v. United Automobile Insurance Company</u>, 60 F.4th 1314, 1319 (11th Cir. 2023) ("section 1395y(b)(2)(B)(vi) is irrelevant . . . [t]he text unambiguously refers only to actions by the United States . . . [and] applies only to claims-filing deadlines in employer group health plans. . . . There

is no basis for us to infer that the provision preempts a claims-filing deadline in a no-fault or general liability policy").

Moreover, the D.C. Circuit has found that 42 C.F.R. §411.24(f)(1) exceeds its statutory authority and is therefore invalid. And the Fifth and Eleventh Circuits have expressly found that the MSPA does not preempt notice provisions under State insurance laws. 42 C.F.R. §411.24(f)(1) states:

> "CMS may recover without regard to any claims filing
> requirements that the insurance program or plan imposes on
> the beneficiary or other claimant such as a time limit for filing a claim
> or a time limit for notifying the plan or program about the need for
> or receipt of services."

However, this subsection of §411.24 directly contradicts other subsections of §411.24 that condition recovery of secondary payments upon the no-fault insurer receiving a "proper claim" from the beneficiary and/or a treatment provider. "Proper claim" is defined elsewhere in the regulations as "a claim that is filed timely and meets all other claim filing requirements specified by the plan, program, or insurer". 42 C.F.R. §411.21. If the no-fault insurer does not receive a "proper claim", the MAO's recourse is against the beneficiary or the treatment provider – not the insurer:

> "(1) Basic rule. If Medicare makes a conditional payment with
> respect to services for which the beneficiary or provider or supplier
> has not filed a proper claim with a primary payer, and Medicare is
> unable to recover from the primary payer, Medicare may recover
> from the beneficiary or provider or supplier that was responsible
> for the failure to file a proper claim."

42 C.F.R. §411.24(l).

Other regulations that apply specifically to claims against no-fault insurance further support this view. For example, 42 C.F.R. §411.51, entitled "Beneficiary's responsibility with respect to no-fault insurance", provides:

"(a) The beneficiary is responsible for taking whatever action is necessary to obtain payment that can reasonably be expected under no-fault insurance.

* * *

(c) Except as specified in §411.53, Medicare does not pay for services that would have been covered by the no-fault insurance if the beneficiary had filed a proper claim."

Similarly, 42 C.F.R. §411.53, entitled "Basis for conditional Medicare payment in no-fault cases", provides:

"(a) A conditional Medicare payment may be made in no-fault cases under either of the following circumstances:

(1)  The beneficiary has filed a proper claim for no-fault insurance benefits but the intermediary or carrier determines that the no-fault insurer will not pay promptly . . . This includes cases in which the no-fault insurance carrier has denied the claim.

(2)  The beneficiary, because of physical or mental incapacity, failed to meet a claim-filing requirement stipulated in the policy.

(b)  Any conditional payment that CMS makes is conditioned on reimbursement to CMS in accordance with subpart B of this part."

These provisions would make no sense if 42 C.F.R. §411.24(f)(1) preempted the claims filing requirements of state no-fault laws. The D.C. Circuit concluded that it did not.  It considered a challenge raised by two employer group health plans to five regulations promulgated by the Health Care Financing Administration ("HCFA"). The D.C. Circuit held that two of the regulations, including 42 C.F.R. §411.24(f), "go[es] beyond the Secretary's statutory authority and hence [is] invalid".  Health Insurance Association of America, Inc. v. Shalala, 23 F.3d 412, 413 (D.C. Cir. 1994).  The court reasoned:

"Clause (2)(B)(i) provides that any Medicare payment is 'conditioned on reimbursement' if it is a 'payment under this subchapter with respect to any item or service to which subparagraph (A) applies.'  Subparagraph (A) in turn embraces

- 16 -

payments 'with respect to any item or service to the extent that . . . payment [1] *has been made*, or [2] *can reasonably be expected to be made*' under the plan.  **If the beneficiary and provider have already missed the filing deadline by the time Medicare makes its payment, then neither of those two criteria is satisfied**, and the authorization of recovery actions in clause (2)(B)(ii) applies only to an 'item or service' as to which (2)(B)(i) makes Medicare's payment 'conditioned on reimbursement.' . . . Even if Medicare makes its payment *before* the plan's deadline passes, so that payment might be 'expected to be made' under subparagraph (2)(A), the government's direct right of action lies against 'any entity which *is* required or responsible under this subsection to pay . . . under a primary plan,' 42 U.S.C. §1395y(b)(2)(B)(ii) (emphasis added) – not against an entity that would have been responsible to pay if the beneficiary (or other obligee) had followed the proper procedures.  **Likewise, HCFA can seek reimbursement from the plan 'when notice or other information is received that payment for such item or service . . .** *could be* **made' under the plan,** id. **§1395y(b)(2)(B)(i) . . . not (as the district court quoted the MSP statute to say) 'when notice or other information is received that payment for such item . . .** *could have been* **made' under the plan**".

Id. at 419-20 (emphasis in bold added).

    The Fifth Circuit in Caldera v. The Insurance Company of the State of

Pennsylvania, 716 F.3d 861 (5th Cir. 2013) similarly considered whether the MSPA preempted a

pre-authorization requirement for certain medical procedures in a Texas workers' compensation

policy.  The plaintiff there – Caldera – sued his employer's workers' compensation carrier

seeking double damages for its refusal to reimburse Medicare for the cost of his surgeries.  The

insurance company argued it had no obligation to pay because Caldera had not obtained

preauthorization for the procedures in accordance with Texas workers' compensation law.

Caldera argued that the MSPA preempted the pre-authorization requirements of the workers'

compensation law.

    Citing 42 C.F.R. §§411.24(l) and 411.21, the Court reasoned that "[f]ar from

preempting the state-law workers' compensation regime, then, the regulations accept that

Medicare may be unable to recover from a carrier because a beneficiary failed to file a proper

claim under state law". <u>Id.</u> at 865.  It held that Caldera, therefore, failed to state a claim:

> "Congress enacted the MSP to reduce Medicare costs by making
> Medicare a secondary payer of insurance benefits.  It did not,
> however, intend to override a primary payer's ability to impose
> medical necessity requirements in accordance with state law.
> Texas has gone to great lengths to craft a statutory structure that
> carefully constructs rights, remedies, and procedures to provide
> adequate coverage for injured workers. . . . That structure contains
> detailed procedures and penalties for failure of the various
> interested parties to comply with statutory and regulatory
> requirements. . . . We will not upset this well-oiled machine absent
> a clear directive from Congress.
>
> Under the MSP, if a claimant fails to file a proper claim in
> accordance with state-law requirements and, therefore, cannot
> recover benefits from the primary payer, so be it.  Medicare can
> refuse to make a conditional payment, or it can seek
> reimbursement from the claimant himself.  In any event, the
> claimant cannot succeed under the MSP.  Because that is Caldera's
> situation here, he fails to state a claim under Rule 12(b)(6)."

<u>Id.</u> at 866-67.

The Eleventh Circuit relied upon <u>Caldera</u> and came to a similar conclusion in

<u>United Automobile</u>, <u>supra</u>.  That case involved two consolidated cases in which MSP was suing

a liability insurer and a no-fault insurer for reimbursement of medical expenses paid by its MAO

assignor – the same scenario we have here.  The Court found, *inter alia*, that the MSPA did not

preempt notice requirements of Florida's no-fault statute (Fla. Stat. §627.736(10)(a)) that

required the MAO's assignee (MSP) to send the no-fault carrier a pre-suit demand letter.

The Court rejected MSP's preemption arguments for all three classes of

preemption – express, conflict, and unconstitutional obstacle – with respect to that statutory

requirement:

> "The [MSPA] does not expressly preempt section 627.736(10)(a).
> We have no reason to conclude from the text of the Act that

> Congress's purpose in shifting primary-payer responsibility to
> private insurers to curb the rising costs of Medicare . . . included
> preempting state procedural laws governing insurance liability.
> And there is no evidence that Congress sought to broadly preempt
> the insurance regulatory regimes traditionally administered by
> states.
>
> \*\*\*
>
> The Act also does not give rise to conflict preemption.  MSP does
> not assert that it is physically impossible to comply with both the
> [MSPA] and the pre-suit demand requirement of Florida law.  And
> the pre-suit demand requirement does not create an
> unconstitutional obstacle to a [MAO's] reimbursement.
>
> \*\*\*
>
> Florida's pre-suit demand requirement does not meet this relatively
> high bar.  The statutory notice requirement and corresponding 30-
> day cure period are procedural requirements that may result in a
> brief delay.  But the Florida law does not prevent or meaningfully
> impede the reimbursement of [MAOs] that Congress sought to
> facilitate."

Id. at 1322.

The Second Amended Complaint here fails to allege that the treatment provider or

the beneficiary filed a "proper claim" with Merchants or that HIPGNY submitted the disputed

medical bills to Merchants for payment within the 45-day window provided by New York's no-

fault regulations.  Instead, the Second Amended Complaint alleges that the "medical providers

subsequently issued to HIPGNY bills for payment of R.A.'s accident-related medical expenses".

[66], ¶71 (emphasis added); see also ¶83 (with respect to J.O.); ¶93 (with respect to K.Y.), and

¶105 (with respect to M.G.).

MSP argues it is not required to make such an allegation for its complaint to

survive a motion to dismiss under Rule 12(b)(6):

> "There are only three elements necessary to state an MSP Act
> claim: (1) the defendant's status as a primary plan; (2) the
> defendant's failure to provide for primary payment or appropriate
> reimbursement; and (3) the damages amount".

[130] at 9, *citing* <u>Western Heritage</u>, 832 F.3d at 1239. However, as discussed above, <u>Western Heritage</u> involved an MAO's action against a <u>liability</u> insurer (Western Heritage) that paid a <u>settlement</u> to a Medicare beneficiary without reimbursing the MAO (Humana) the amount it paid for the beneficiary's medical care. The Eleventh Circuit expressly stated in <u>United Automobile</u>, <u>supra</u>, that its reasoning in <u>Western Heritage</u> (referred to therein as <u>Humana</u>) did not apply to its consideration of the no-fault pre-suit notice requirement challenged there:

> "MSP also argues that <u>Humana</u> supports its position. 832 F.3d 1229. There, we determined that the defendant primary payer, Western Heritage Insurance, had constructive knowledge that the plaintiff [MAO] had made a payment, so Western Heritage was required to reimburse the organization. . . . According to MSP, because constructive knowledge is sufficient to obligate a primary payer to reimburse an [MAO], imposing an additional state-law formal demand requirement would conflict with this low federal statutory threshold to the federal right of action.
>
> We disagree. Our decision in <u>Humana</u> did not foreclose the possibility that state-law procedural requirements could be superimposed. And the pre-suit demand requirement of section 327.736(10)(a) was not at issue. So that decision does not control this appeal."

<u>United Automobile</u>, 60 F.4th at 1321.

  <u>Western Heritage</u> also did not consider a state-mandated no-fault claims filing provision. Accordingly, its statement of the elements of a MSPA claim against a liability insurer who had paid a settlement to a beneficiary is neither controlling nor persuasive in the context of no-fault insurance claims filing provisions. <u>Western Heritage's</u> statement of the elements of a MSPA claim under those circumstances does not "foreclose the possibility that state-law procedural requirements could be superimposed". <u>Id.</u>

  However, even if I apply the <u>Western Heritage</u> elements to the scenario at issue here, its language nonetheless supports Merchants' argument that MSP's failure to plead that the

providers or the beneficiaries filed proper (*i.e.* timely) claims for the medical expenses that HIPGNY paid is fatal to MSP's claims for reimbursement. The second element of an MSPA reimbursement claim listed in <u>Western Heritage</u> is "failure to provide for primary payment or appropriate reimbursement". 832 F.3d at 1239. As noted by that court, "a primary plan 'fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraph 2(A),' <u>when it fails to honor the underlying statutory or contractual obligation.</u>" <u>Id.</u> at 1237 (emphasis added).

Here, where New York no-fault insurance laws – and the insurance contracts that include state-mandated provisions – are at issue, a no-fault insurer cannot owe <u>any</u> payment if the "eligible injured person" (*i.e.* the insured) or "that person's assignee or representative" (*i.e.* the medical treatment provider) does not "submit written proof of claim to the Company, including full particulars of the nature and extent of the injuries and treatment received and contemplated" (*i.e.* an invoice for medical treatment and accompanying treatment notes) "as soon as reasonably practicable but, in no event later than 45 days after the date services are rendered". 11 N.Y.C.R.R. §65-1.1(d). Absent any allegation that the beneficiary, medical provider, or HIPGNY filed a timely claim, it is not plausible that Merchants "has or had a responsibility to make payment" pursuant to the underlying statutory or contractual obligation (*i.e.* New York's no-fault insurance law and its no-fault insurance contract) for the items or services for which MSP now claims reimbursement. *See* 42 U.S.C. §1395y(b)(2)(B)(ii).

MSP does not point to any such allegations in the Second Amended Complaint that would satisfy this element of a claim for reimbursement from a no-fault insurance provider. To the contrary, MSP specifically alleges that the treatment providers submitted invoices for

medical treatment <u>directly to HIPGNY</u>.  MSP does not allege that the insureds, the treatment providers, or even HIPGNY ever submitted the invoices for treatment to Merchants.

The closest that MSP comes to pleading satisfaction of the claims-filing requirements is language in paragraphs 120 and 136 of the Second Amended Complaint.  Those paragraphs allege, respectively, that "[a]ll conditions precedent to the filing of this lawsuit have occurred, been performed, or have been otherwise waived by Defendants", and "[p]laintiffs complied with all conditions precedent to the filing of this action, to the extent applicable".  [66], ¶¶120, 136.

These conclusory allegations are insufficient.  First, the claims filing provision of New York's no-fault insurance law does not, by its plain language, impose a condition precedent to filing suit.  It imposes a claims filing requirement that must be fulfilled before there is <u>coverage</u> for a claim made pursuant to New York's no-fault statute.

Second, even if we construe these allegations as asserting compliance with the claims filing deadlines of New York's no-fault law, they are legal conclusions unsupported by any facts making it plausible that the claims-filing deadline was met by the insured, the medical treatment providers, or HIPGNY.  Rule 9(c) states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed".  However, this provision nonetheless requires MSP to plead sufficient facts to make such an allegation plausible.  *See* <u>Dervan v. Gordian Group LLC</u>, 2017 WL 819494, *5-6 (S.D.N.Y. 2017).

Other courts in this circuit read Rule 9(c) in accordance with <u>Iqbal's</u> analysis of nearly identical language in Rule 9(b), which permits "[m]alice, intent, knowledge, and other conditions of a person's mind" to be "alleged generally".  Rule 9(b); *see also, e.g.* <u>Dervan</u>, 2017

WL 819494 at *5-6 (holding that "the occurrence or performance of a condition precedent – to the extent that it need be pled as a required element of a given claim – must be plausibly alleged in accordance with Rule 8(a)", a result "arguably dictated by <u>Iqbal</u>").

The Supreme Court in <u>Iqbal</u> held with respect to Rule 9(b):

> "Respondent finally maintains that the Federal Rules expressly allow him to allege petitioners' discriminatory intent 'generally,' which he equates with a conclusory allegation. . . . Were we required to accept this allegation as true, respondent's complaint would survive petitioners' motion to dismiss. But the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.

> It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.' But 'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8. . . . And Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."

<u>Ashcroft v Iqbal</u>, 556 U.S. 662, 686-87 (2009).

Accordingly, MSP's conclusory allegations that "all conditions precedent" were satisfied before filing this action, without pleading any facts to support the conclusion that those allegations are plausible, are not sufficient to withstand Merchants' Rule 12(b)(6) motion.

As stated in <u>Caldera</u>:

> "Under the [MSPA], if a claimant fails to file a proper claim in accordance with state-law requirements and, therefore, cannot recover benefits from the primary payer, so be it.  Medicare [or the MAO] can refuse to make a conditional payment, or it can seek reimbursement from the claimant himself.  In any event, the claimant cannot succeed under the MSP.  Because that is

[plaintiff's] situation here, [it] fails to state a claim under Rule 12(b)(6)."

Caldera, 716 F.3d at 867.

Accordingly, I recommend that Merchants' motion to dismiss pursuant to Rule 12(b)(6) be granted with respect to MSP's claims for reimbursement from Merchants' no-fault insurance policies. Because MSP has not alleged or argued that it is able to plausibly make such allegations, I further recommend dismissal of these claims without leave to amend.

## CONCLUSION

For these reasons, I recommend that Merchants' motion to dismiss for failure to state a cause of action [77] be granted, with leave for MSP to amend its complaint only with respect to its allegations concerning liability settlements. Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by January 22, 2026. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 8, 2026

_____/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge
